UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                :
                                                      :       Chapter 15
    BANCREDIT CAYMAN LIMITED,      :       Case No. 06-11026 (SMB)
    (IN LIQUIDATION)                :
                                                      :
         Foreign Debtor.       :
------------------------------------------------------------X
BANCREDIT CAYMAN LIMITED,                             :
(in official liquidation), by and through its JOINT   :
OFFICIAL LIQUIDATORS,                                 :
Richard Fogerty and James Cleaver                     :
                                                      :
         Plaintiffs,           :
    -- against --                    :       Adv. Proc. No. 08-1147
                                                      :
ORLANDO YANEZ SANTANA and                             :
NAVICARGO SA,                                         :
a Dominican Republic corporation                      :
                                                      :
         Defendants.           :
------------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## GRANTING MOTION TO DISMISS
## ADVERSARY PROCEEDING

**A P P E A R A N C E S:**

WOODS & AITKEN LLP
Attorneys for Bancredit Cayman Limited (In Official Liquidation)
301 South 13th Street, Suite 500
Lincoln, Nebraska 68508

    Krista L. Kester Esq.

SEIDMAN, PREWITT, DIBELLO & Lopez, P.A.
Attorneys for Orlando Yanez Santana and Navicargo, S.A.
1550 Madruga Avenue, Suite 504
Coral Gables, Florida 33146

    Felix J. Lopez Esq.

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

Bancredit Cayman Ltd. ("Bancredit") is a defunct Cayman Islands financial institution that did business in the Dominican Republic. Richard Fogerty and G. James Cleaver (the "plaintiffs") were appointed by a Cayman Islands court to serve as the Joint Official Liquidators of Bancredit, and have been recognized by this Court pursuant to chapter 15 of the Bankruptcy Code as Bancredit's foreign representatives. (See In re Bancredit Cayman Ltd., Case No. 06-11026 (SMB)(Order Granting Recognition, dated June 15, 2006)(ECF Doc. #13).) On March 31, 2008, they brought this adversary proceeding against the defendants Orlando Yanez Santana ("Yanez") and Navicargo, S.A. to recover the unpaid balances on a bank loan. The defendants have moved to dismiss the Complaint on several grounds. For the reasons that follow, the motion is granted on the basis of forum non conveniens.

## BACKGROUND [1]

Navicargo, S.A. is a Dominican Republic corporation. The Complaint alleges that it does business in Florida, (Complaint ¶ 9) (ECF Doc. #1), a statement the defendants deny. (Declaration of Orlando Yanez Santana in Support of the Motion to Dismiss and Declare the Proceeding Null and Void, dated July 30, 2008, at ¶ 5) ("Yanez Declaration").)[2] Yanez is a citizen and resident of the Dominican Republic. (See id. ¶

---

[1] On a motion to dismiss for forum non conveniens, a court considers not only the allegations of the pleadings but all evidence before it, and does not assume that the facts pleaded are true. Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc., 448 F. Supp. 2d 520, 522 (S.D.N.Y. 2006); In re Livent, Inc. Sec. Litig., 78 F. Supp. 2d 194, 200 (S.D.N.Y. 1999) ("The presumption on factual inferences does not apply to a forum non conveniens motion. A forum non conveniens inquiry goes to the court's subject matter jurisdiction over the action, and '[i]n resolving the jurisdictional dispute, the district court must review the pleadings and any evidence before it, such as affidavits.'") (quoting Cargill Intern. S.A. v. M/T PAVEL DYBENKO, 991 F.2d 1012, 1019 (2d Cir. 1993))).

2

2.) The Complaint alleges that Yanez is also a resident of Florida, (Complaint ¶ 8), and Yanez admits that he and his wife own an apartment in Florida that they used while she was undergoing medical treatment in the United States. (Yanez Declaration ¶ 10.) In addition, Yanez is the chief executive officer and a director of Navicargo, S.A. as well as Navicargo, Inc., a Florida Corporation. (Complaint ¶ 8.)

On or about June 21, 2002, the defendants borrowed US$2.1 million from Banco Nacional de Credito, S.A, and executed a promissory note (the "Note") to evidence the debt. (Complaint, Ex. 2.) The lender is or was a Dominican corporation, and the Note was executed in Santo Domingo. (See id.) After the plaintiffs commenced and the Court recognized the Bancredit foreign proceeding in the spring of 2006, they acquired the Note by assignment (the "Assignment") from Banco Nacional's successor, Banco Leon. (See Complaint, Ex. 4 (Assignment, dated Jan. 4, 2007).) The Assignment was also executed in Santo Domingo. (Id.)

The relationship, if any, between the Note and Bancredit prior to the Assignment is unclear. The Assignment recited that the Note "was executed for the purposes that [Yanez and Navicargo, S.A.] guarantee a loan for the amount of [US$ 2.1 million] in the Bancredit Cayman." The plaintiffs interpret this to mean that the Note was "originally executed to assure payment of a loan to Bancredit Cayman, rather than to Banco National de Credito," (emphasis in original)(Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Quash Service of Process, dated Sept. 5, 2008, at 13 ("Plaintiffs' Memo")(ECF Doc. # 21)), but this is speculation. The quoted portion of the

---

[2] The Yanez Declaration (Spanish and English versions) is attached as Exhibit 1 to the Defendants' Motion to Dismiss and to Quash Service of Process and Supporting Memorandum of Law dated July 30, 2008 ("Defendants Memo")(ECF Doc. #19.)

3

Assignment, which is translated from Spanish, is ambiguous. Furthermore, the parties to the Assignment were not the parties to the original loan, and their recitation of the history was not based on personal knowledge. Most important, the plaintiffs have not explained why the defendants would borrow money from Bancredit but execute the Note in favor of Banco Nacional.

In any event, the plaintiffs moved quickly to enforce the Note in the Dominican courts. They filed a complaint against Yanez on April 4, 2007. (See Declaration of Jose Javier Ruiz Perez, dated July 30, 2008, at ¶ 33 ("Ruiz Declaration").)[3] They subsequently filed two complaints against Navicargo, S.A. on July 27, 2007, but the two cases were merged into one. (Id.) On August 3, 2007, Navicargo, S.A. and Yanez filed a complaint to annul the Assignment, and Yanez filed a separate complaint seeking damages. (Id.) Thus, four litigations are pending in the Dominican Republic, and the parties have been actively litigating these actions. (Id. ¶¶ 36-37).

On March 31, 2008, the plaintiffs commenced this adversary proceeding to collect the unpaid balance of the Note, which totals approximately US$3.7 million. (Complaint ¶¶ 16, 20, 25, 26). On July 20, 2008, the defendants moved to dismiss the Complaint on various grounds falling generally into three categories. First, they argued that the Court lacked subject matter jurisdiction. Second, they insisted that the service of process was improper. This ground entailed the resolution of numerous factual disputes, including the relationship between Navicargo, S.A. and Navicargo, Inc., the authority of Marcos Taveras, the manager of Navicargo, Inc., to accept process on behalf of Navicargo, S.A.,

---

[3] The Ruiz Declaration (Spanish and English versions) is attached as Exhibit 3 to the Defendants' Memo.

4

and whether the manner of service complied with New York's Civil Practice Law & Rules. Third, the defendants contended that the Court should defer to the Dominican courts for reasons of international comity and forum non conveniens.

## DISCUSSION

The doctrine of forum non conveniens permits a court to dismiss a civil action even where venue is proper and jurisdiction exists. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998). The decision is committed to the court's discretion, id., and involves a multi-step step inquiry. First, the court must determine the degree of deference to be given to the plaintiff's choice of forum. Do Rosario Veiga v. World Meteorological Organisation, 486 F. Supp. 2d 297, 301 (S.D.N.Y. 2007); see Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001) (en banc). Second, the court must satisfy itself that an adequate alternative forum exists. PT United Can Co., 138 F.3d at 73; Do Rosario Veiga , 486 F. Supp. 2d at 301; Corporacion Tim, S.A. v. Schumacher, 418 F. Supp. 2d 529, 531 (S.D.N.Y. 2006). See Gilbert, 330 U.S. at 506-07. Third, the court the "must carefully consider all the private and public interest factors enumerated by the Supreme Court" in Gilbert. PT United Can Co., 138 F.3d at 73. The movant bears the burden of showing that the plaintiff's chosen forum is not the appropriate forum. PT United Can Co., 138 F.3d at 73. At bottom, a court should dismiss a case under forum non conveniens in favor of an adequate alternative forum "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981)(footnote omitted).

5

**A.      The Plaintiffs' Choice of Forum**

In Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S. Ct. 1184, 1191 (2007), the Supreme Court explained:

> A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum. When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor "applies with less force," for the assumption that the chosen forum is appropriate is in such cases "less reasonable."

Id. at 1191 (quoting Piper Aircraft Co., 454 U.S. at 255-56); accord Do Rosario Veiga, 486 F. Supp. 2d at 302 ("[W]here the circumstances indicate that the parties and material events bear no bona fide connection to the United States, or that in relation to the core operative facts in dispute the parties and events at best have only marginal links to the plaintiff's chosen venue, that choice of forum is not entitled to special deference, in particular where the claimants are all foreign residents."); Corporacion TIM, S.A., 418 F.Supp.2d at 534 (same).

Here, the plaintiffs are foreign liquidators appointed by the Cayman Islands' court. The defendants are domiciliaries of the Dominican Republic, although Yanez owns property in Florida and the plaintiffs contend that Navicargo does business in Florida. Nevertheless, it is undisputed that except for the thin reed of the recognition order, neither the parties nor the events have any connection to this forum. This is not the plaintiffs' "home court," and their choice of this forum is not entitled to any special deference.

**B.      The Adequacy of the Alternative Forum**

The alternative forum is ordinarily adequate if (1) the defendants are amenable to service of process there, and (2) the forum permits litigation of the subject matter of the

6

dispute. Corporacion TIM, S.A., 418 F.Supp.2d at 532; Ilusorio v. Ilusorio-Bildner, 103 F.Supp.2d 672, 674 (S.D.N.Y. 2000). See Piper Aircraft Co., 454 U.S. at 254 n.22; Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 981 (2d Cir.1993). A foreign forum is not inadequate simply because its judicial system differs from our own. PT United Can Co., 138 F.3d at 73. "At this stage, considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards, [citation omitted] so such a finding is rare." PT United Can Co., 138 F.3d at 73. Our courts should be "wary of branding other nations' judicial forums as deficient," Corporacion TIM, S.A., 418 F.Supp.2d at 532, lest we become the forum for adjudicating foreign disputes with which we have little connection. Jhirad v. Ferrandina, 536 F.2d 478, 484-85 (2d Cir.1976)("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.").

Here, the Dominican Republic courts provide an adequate alternative forum. The defendants are unquestionably amenable to process, and are already defendants in two actions commenced by the plaintiffs. One or both are also plaintiffs in two others. In addition, the Dominican courts are equipped to hear breach of contract and collections disputes like those raised in this adversary proceeding, Ruiz Declaration ¶¶ 21-22, 27; see, e.g., Banco Mercantil, S.A., v. Arencibia, 927 F. Supp. 565, 567 (D.P.R. 1996), as well as other civil matters. See, e.g., Corporacion TIM, S.A., 418 F.Supp.2d at 532 (breach of fiduciary, conversion and intentional interference with contract rights); Dominguez v. Pyrgia Shipping Corp., No. CIV. A. 98-529 (SSV), 1999 WL 438477, at *2 (E.D. La. June 28, 1999) (seaman's personal injury claim); Calvo v. Sol Melia, S.A.,

7

761 So.2d 461, 464 (Fla. Dist. Ct. App. 2000)(personal injury claim by non-resident vacationer).

The worst that can be said about the Dominican civil courts is that they occasionally suffer from lengthy delays in adjudicating cases. See Country Reports on Human Rights Practices – 2007 (Dominican Republic), at § 1(e) (reprinted at http://www.state.gov/g/drl/rls/hrrpt/2007/100637.htm) ("Commercial, civil, and labor courts reportedly suffered lengthy delays in adjudicating cases.").[4] The plaintiffs' expert opined that Dominican proceedings "may take several years," and some "may take 6-10 years to obtain a final decision." (Declaration of Paula M. Puello, dated Sept. 4, 2008, at ¶ 9 ("Puello Declaration").)[5] Although an extreme delay may render a forum inadequate, Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1227-28 (3d Cir. 1995)(possible 25 year delay rendered India forum inadequate), litigation delay is a fact of life that also plagues our own courts, id. at 1227, and the prospect of some delay does not render a forum inadequate. Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1283 (11th Cir. 2001)("The plaintiffs' concerns about Argentine filing fees, the lack of discovery in Argentine courts, and their fear of delays in the Argentine courts do not render Argentina an inadequate forum."). See Borden, Inc. v. Meiji Milk Products Co., Ltd., 919 F.2d 822, 829 (2d Cir. 1990)("[S]ome inconvenience or the unavailability of beneficial litigation

---

[4] The Country Report also stated that "undue political or economic influence in civil court decisions remained a problem," Country Reports on Human Rights Practices – 2007 (Dominican Republic), at § 1(e), but the plaintiffs did not raise this as a reason to deny the motion. They did not contend that they have been victims of any improper influence, or that they cannot get a fair hearing in the Dominican courts.

[5] The Puello Declaration is annexed to the Plaintiffs' Memo as Exhibit 2. The defendants' expert did not offer his own estimate. Instead, he noted that the Dominican Congress and Supreme Court have taken steps to expedite the resolution of civil litigation, to sanction slow judges and to reassign their cases. (Ruiz Declaration ¶ 12.) The plaintiffs' expert disputed the existence or efficacy of these salutary measures. (Puello Declaration ¶ 8.)

procedures similar to those available in the federal district courts does not render an alternative forum inadequate.") (quoting Shields v. Mi Ryung Constr. Co., 508 F. Supp. 891, 895 (S.D.N.Y.1981)).

The plaintiffs' expert did not opine that this case would take six to ten years, or even that it would take the "several years" that some cases do. The plaintiffs themselves consider the pending dispute to be a simple one that presents only issues of law. They state that "little documentation and few witnesses will be required because there is no factual dispute as to whether a debt is owed." (Plaintiffs' Memo at 50.) In the end, the plaintiffs' argument comes down to the contention that the Dominican court is inadequate because this Court could decide the dispute much quicker. I cannot conclude that this should brand the Dominican legal system as deficient.

The plaintiffs also point to several other alleged inadequacies in the Dominican judicial system. (See Plaintiffs' Memo at 32-33.) For example, they contend that the Dominican Republic is a civil law country founded on the French Civil Code, and does not recognize the principle of stare decisis. (Id.) On that basis, we would have to conclude that a sizeable chunk of the world's legal systems is inadequate.

The plaintiffs also make the related argument, without citation to any authority, that they would face difficulties enforcing a Dominican money judgment in the United States because it is not a "sister common law jurisdiction." (Id. at 33.) In fact, American courts regularly enforce money judgments obtained in civil law jurisdictions, provided that they are not repugnant to public policy. E.g., Schiffahrtsgesellschaft v. Navimpex, 29 F.3d 79, 82 (2d Cir. 1994)(enforcing French money judgment under New York's

9

Uniform Foreign Money-Judgments Act as codified in Article 53 of the C.P.L.R.); Pariente v Scott Meredith Literary Agency, Inc., 771 F. Supp. 609, 616-18 (S.D.N.Y., 1991)(same); Ricart v. Pan Am., No. 89-0768(HHG), 1990 WL 236080, at *4 (D.D.C. Dec. 21, 1990)(overruling objections to the enforcement of a Dominican money judgment subject to a determination of its finality). A judgment based on an unpaid bank loan is not repugnant to our public policy.

In addition, the plaintiffs contend that the Dominican legal environment is "not necessarily a safe one," and that international investors insert arbitration clauses in their contracts "to avoid that the resolution of conflicts reach the Dominican Republic courts." (Puello Declaration ¶ 12.) The defendants' expert offered an equally conclusory statement that the "safe, legal environment has led important international corporations to invest in the Dominican Republic and select Dominican laws for the vast number of their international transactions." (Ruiz Declaration ¶ 13.) Neither statement constitutes evidence, and the Department of State Country Report, which does, see Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2d Cir. 2000), did not suggest that litigants in the Dominican Republic face personal safety issues. Moreover, it is anomalous for the plaintiffs to accept the assignment of a Dominican bank loan made to Dominican nationals and argue that the Dominican courts are too inadequate to resolve disputes involving the Note or the Assignment. Banco Mercantil, S.A., 927 F. Supp. at 567. See also Blanco, 997 F.2d 974, 981-82 (2d Cir.1993)("It is at least anomalous for a Venezuelan corporation to contract with a Venezuelan bank for the financing of a housing project in Venezuela, specify in both pertinent contracts that litigation concerning them may be brought in Venezuela, and then argue to an American court that

10

the Venezuelan system of justice is so endemically incompetent, biased, and corrupt as not to provide an adequate forum for the resolution of such contractual disputes.").

The plaintiffs also attack two specific requirements under Dominican law. Foreign plaintiffs may be required to post a bond in twice the amount claimed to cover claims and damages that may arise in the course of the litigation. (Puello Declaration ¶¶ 14, 15.) The defendants have already sought to compel the plaintiffs to post bonds in two of the pending proceedings, (id. ¶ 14), the plaintiffs have vigorously opposed the request, (Plaintiffs' Memo 31 n. 8), and the matter must be decided by the Dominican court.

Even if the plaintiffs are compelled to post the bonds, this does not render the Dominican forum inadequate. The bonding requirement does not affect the defendants' amenability to the service of process or the Dominican Republic court's ability to hear the dispute. Moreover, under New York law, a court may require a party in some circumstances to post security before the party will be allowed to maintain the action or obtain relief. E.g., N.Y. BUS. CORP. LAW § 627 (McKinney 2003) (security to cover reasonable expenses, including attorney's fees, in shareholder's derivative action); N.Y. C.P.L.R. 6212(b) (McKinney 1980) (undertaking required on motion for an order of attachment as security for costs and damages, including reasonable attorney's fees); id., 6312(b) (undertaking to secure payment of damages and costs prior to granting an injunction); N.Y. P'SHIP LAW § 121-1003 (McKinney 2006)(security to cover reasonable expenses, including attorney's fees, in derivative action brought by limited partner). See FED. R. CIV. P. 65(c) (requiring party seeking preliminary injunction to post security to cover costs and damages). Consequently, imposing bonding requirements on a litigant is not repugnant to our public policy.

11

According to the plaintiffs, Dominican law also requires judgment creditors to pay a considerable tax to enforce their judgments. (Puello Declaration ¶ 13. See Plaintiffs' Memo at 31.) Initially, the tax does not affect the defendants' amenability to process or the Dominican court's ability to hear the dispute; in fact, it assumes that the Dominican court has rendered a judgment in the plaintiffs' favor. Moreover, the plaintiffs will have to pay the tax as long as they seek to enforce the judgment in the Dominican Republic, a possibility suggested by their concern over the tax. In other words, even if the plaintiffs obtain a judgment in this Court, they will still have to convert it to a Dominican judgment and enforce it in accordance with Dominican law.

**C.   The Gilbert Factors**

   **a.   Private Interests**

In weighing the litigants' private interests, a court should consider (a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive. Gilbert, 330 U.S. at 508; Blanco, 997 F.2d at 982. This case involves an effort to enforce a Note executed in the Dominican Republic by Dominican nationals. The parties, the witnesses and any relevant documents are located in the Dominican Republic or elsewhere, but certainly not in the United States.[6] Thus, even if the plaintiffs cannot compel the testimony or production of documents by a witness under Dominican Republic law, (see Puello Declaration at ¶16), the same witnesses and documents are also beyond the compulsory process of this Court.

---

[6]   At oral argument the plaintiffs' attorney stated, "I don't believe that there are any U.S. witnesses. In essence, the plaintiff's witnesses would be Cayman witnesses." (Transcript of hearing, held September 25, 2008 at 34) (ECF Doc. # 29).)

12

Moreover, a Dominican forum will spare the cost and delay of travel to the United States, the translation and interpretation expenses, and the need for expert witnesses on questions of Dominican law.  See Blanco, 997 F.2d at 982(Venezuelan forum more convenient where evidence and witnesses were located there, and "[t]he documentary evidence is in the Spanish language, as would be trial or deposition testimony, requiring translation to English that would result in significant cost to the parties and delay to the court."); Schertenleib v. Traum, 589 F.2d 1156, 1165 (2d Cir.1978)(Geneva was more convenient forum where all of the documentary evidence and witnesses were located in Geneva or Europe, the relevant documents were written in French, and litigation in the United States would require the submission of "inevitably conflicting" expert affidavits on Swiss law); Corporacion TIM, S.A., 418 F.Supp.2d at 534-35(Dominican Republic more convenient forum where the witnesses and documents were located in the Dominican Republic.)

The plaintiffs contend that the defendants have already acknowledged their liability.  (Plaintiffs' Memo 50.)  Hence, the plaintiffs will need few documents and witnesses to prove their case.  (Id.)  In addition, the cost for the few cooperative witnesses will be minimal, and New York is as at least as convenient as the Dominican Republic for the production of the Cayman Islands documents and witnesses.  (Id.)  Furthermore, the principal documents in this simple breach of contract case have already been translated, and although Yanez apparently testified through an interpreter at his deposition, he demonstrated a fluency in English.  (See id. 50-51.)

Many of these arguments are undercut, however, by the plaintiffs' repeated concerns that the Dominican Republic judicial system lacks compulsory process.  (See id.

13

32 ("Bancredit cannot compel witnesses either to appear at trial or to produce documents for trial in its Dominican proceedings.")); 34 ("[T]he absence of compulsory process under the Dominican system weighs heavily against abstention."); 48 ("[T]he Dominican forum cannot be considered an adequate alternative forum for this dispute in light of . . . the absence of any compulsory process in the Dominican proceedings."); 51 ("[A]ccess to evidence in civil actions in the Dominican courts is very limited for Bancredit. Thus, the evidence does not establish that the 'ease of access to evidence' factor weighs strongly in favor of a trial in the Dominican Republic.").) The concern over the lack of compulsory process is at odds with the plaintiffs' contention that this is a straightforward case presenting only issues of law. (Id. 53 ("[B]ased upon the existing evidence, there appear to be only questions of law remaining to be decided.").)

In any event, this Court cannot compel the appearance of the Dominican witnesses, and it is more cost effective to bring the cooperating witnesses to the Dominican court than to New York. Moreover, the reference to the convenience or cost of producing Cayman Islands witnesses and documents is not entitled to any weight because it does not appear that this evidence is relevant to the underlying action on the Note.

The plaintiffs also overlook the language and foreign law problems generated by the case. Yanez may be fluent in English, but his deposition indicates that he testifies in his native Spanish. (See Yanez Declaration.) Thus, the relevant deposition and trial testimony, if any, will have to be translated. In addition, even if there are no disputed issues of fact, the plaintiffs ignore the cost of producing experts on Dominican law. According to the defendants' expert, the Assignment to the plaintiffs was null and void

14

under Dominican law, either because no consideration was paid by the plaintiffs or because the Assignment did not recite the consideration paid by the plaintiffs. (See Ruiz Declaration ¶ 40.) The plaintiffs' expert disagreed and opined that the Assignment was valid. (Puello Declaration ¶¶ 21-24.)

In addition, the defendants' expert stated that the Superintendency of Banks has been called on to intervene and provide an expert report regarding irregularities in the Note, including the absence of an interest rate, late payment, maturity or expiration date. (Ruiz Declaration ¶ 34.) The plaintiffs' expert responded that the Superintendency of Banks has not been called on to intervene, and does not have jurisdiction relating to the dispute. (Puello Declaration ¶ 25.) Instead, Navicargo, S.A. and Yanez requested the intervention as a delaying tactic. (Id.)

The validity of the Assignment, and perhaps the Note, are issues that must be decided under Dominican law. If the lawsuit proceeds here instead of there, both parties will be required to provide additional and "inevitably conflicting" expert affidavits that discuss the legal issues in more detail. These costs, and the attendant delay, can be avoided if the dispute is litigated in the Dominican Republic. In addition, although the key documents have been translated, the translations are not without ambiguity. Earlier, the Court discussed the language in the Assignment that purported to recount Bancredit's connection to the original transaction. The translation was unclear, and the translations themselves may add an extra layer of ambiguity that the Court will have to resolve.

Finally, the plaintiffs repeat their arguments relating to the bonding requirement and the tax they will have to pay to enforce a judgment. The Court has already addressed

15


these arguments earlier. On balance, the private interests articulated by the Gilbert court weigh heavily in favor of deferring to the Dominican court.

      **b.**     **Public Interest**

Gilbert also identified several public interest factors that a court should consider when faced with a motion to dismiss based on forum non conveniens. These include (a) administrative difficulties relating to court congestion; (b) imposing jury duty on citizens of the forum; (c) having local disputes settled locally; and (d) avoiding problems associated with the application of foreign law. 330 U.S. at 508-09. The plaintiffs contend that the Dominican Republic is pending in the court with the busiest docket, (Puello Declaration ¶11), but "there is no indication that courts in the Dominican Republic are any more congested than the busy courts in this District." Corporacion TIM, S.A., 418 F.Supp.2d at 535.

Furthermore, the plaintiffs' choice of this Court smacks of forum shopping. They acquired a Note that had not been paid. They knew that they would have to enforce it, and should have expected that they would have to sue in the Dominican Republic. In fact, that is precisely what they did, commencing the first Dominican action only three months later. (See Ruiz Declaration ¶33(a).) After four actions were already pending in the Dominican Republic, they commenced this adversary proceeding in a forum with no connection to the transaction. Their actions imply that they became dissatisfied with the progress of the Dominican proceedings or belatedly concluded that they might get a faster resolution in this Court.

Whatever the reason, neither the plaintiffs' status as Cayman Islands domiciliaries nor this Court's recognition order alters the fact this is local Dominican dispute. The Dominican courts are the more appropriate forum, and have the greater interest in applying Dominican law to resolve the controversy. Although "the need to apply foreign law . . . alone is not sufficient to warrant dismissal," Piper Aircraft Co., 454 U.S. at 260 n. 29 (1981); Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 492 (2d Cir. 1998)("While reluctance to apply foreign law is a valid factor favoring dismissal under Gilbert, standing alone it does not justify dismissal."), it may nevertheless be considered as part of the balancing equation. See Monegasque de Reassurances S.A.M. v. NAK NAFTOGAZ OF UKRAINE and State of Ukraine, 158 F. Supp. 2d 377, 387 (S.D.N.Y., 2001)("courts have a legitimate interest in avoiding the difficulty with questions of conflicts of law and the application of foreign law."). Given the many factors that militate in favor of the Dominican forum, the need to apply Dominican law tilts the balance further in that direction.[7]

The plaintiffs' opposition raised two final points that I have not yet addressed. First, they contend that the "United States has a strong interest in ensuring that valid debts can be enforced under the principles of contract law." (Plaintiffs' Memo at 54.) True, but the United States also has a strong interest in not assuming the singular burden of collection court to the world. Furthermore, the case that the plaintiffs cite is distinguishable. In Pravin Banker Assoc., Ltd. v. Banco Popular, 109 F.3d 850 (2d Cir. 1997), the Court declined to stay the enforcement of a judgment based on an unpaid loan

---

[7] The final factor – imposing jury service on our citizens – does not appear to be important in this case. The plaintiffs did not request a jury. Although the defendants have not yet answered, there do not appear to be any disputed factual issues that a jury would have to resolve.

17

made by a United States lender to a Peruvian bank that was guaranteed by the Republic of Peru.  At the time of the judgment, the Peruvian government was attempting to renegotiate its sovereign bank debt.  The Court observed, "the United States has a strong interest in ensuring the enforceability of valid debts under the principles of contract law, and in particular, the continuing enforceability of foreign debts owed to United States lenders."  Id. at 255 (emphasis added).  In contrast, the loan in this case was not made by or payable to a United States lender, and a forum non conveniens dismissal will not prevent the plaintiffs from enforcing their rights in the Dominican Republic as they are already doing.

Second, the plaintiffs contend that retaining the case in this venue promotes the policy of chapter 15 of providing assistance to assure the expeditious and economic administration of foreign insolvency proceedings.  (Plaintiffs Memo 54.)  Although the Court does not quarrel with the plaintiffs' statement of its purpose, chapter 15 was not designed to encourage forum shopping or hear disputes with no connection to the forum.  Suffice it to say, countervailing policies embodied in the doctrines of forum non conveniens, and more generally, international comity, dictate that the balance of public interests weighs in favor of dismissing this case so that the parties can complete the litigations that are already underway in the Dominican Republic.

For the reasons described above, Defendant's motion to dismiss the complaint pursuant to forum non conveniens is granted.  Accordingly, the Court does not reach the

other grounds for dismissal urged by the defendants.  The Clerk of the Court is directed to enter a judgment dismissing the Complaint.

So ordered.

Dated: New York, New York
       November 25, 2008

                                        /s/ *Stuart M. Bernstein*
                                           STUART M. BERNSTEIN
                                        Chief United States Bankruptcy Judge